GROVES, Appellant,

v.

**GOODYEAR TIRE AND RUBBER COMPANY, Appellee.**

[Cite as *Groves v. Goodyear Tire & Rubber Co.* (1991), 70 Ohio App.3d 656.]

Court of Appeals of Ohio,
Auglaize County.

No. 2–89–17.

Decided Feb. 22, 1991.

*Paul E. Howell,* for appellant.
*Kraig Noble,* for appellee.

EVANS, Judge.

Plaintiff-appellant, Bretta C. Groves, appeals from a judgment of the Court of Common Pleas of Auglaize County, granting summary judgment in favor of defendant-appellee, the Goodyear Tire & Rubber Company ("Goodyear").

In the summer of 1987, appellant, Bretta C. Groves, learned of a job opening in Goodyear's St. Marys plant. Appellant applied for the opening and, after several interviews, was selected by appellee to be a process control technician. However, appellant was instructed that she would be employed through the "Wagemaster" service provided by Manpower Temporary Services ("Manpower"). This program generally allows Manpower's customers to screen applicants and choose those who will best fit their needs. Manpower then hires these individuals and assigns them to the customer's place of business.

Roughly one year later, on July 17, 1988, appellant was hired by appellee, subject to her passing a physical examination, and her relationship with

Manpower was terminated. In applying for the position, appellant expressly consented to the physical examination, which included a urinalysis test for illegal drugs. Appellant's urinalysis test revealed in her system the presence of tetrahydrocanabinol ("THC"), the primary intoxicant found in marijuana. Whereupon, appellant was immediately discharged.

On November 10, 1988, appellant filed a complaint against appellee alleging breach of implied contract, promissory estoppel, and invasion of privacy. On August 8, 1989, appellee filed a motion for summary judgment. By judgment entry of November 2, 1989, without opinion, the trial court sustained appellee's motion for summary judgment. It is from this judgment that appellant appeals, submitting one assignment of error which provides as follows:

"The trial court erred in granting appellee's motion for summary judgment against appellant on all causes of action set forth in her complaint."

Initially, we note Loc.R. 7(B), which requires assignments of error to be set forth with specificity; appellant's assignment of error is not in conformity therewith. Nonetheless, in the interests of justice, we will consider the matter on its merits.

Civ.R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. See *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489; *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267; *Price v. A & G Mfg. Co.* (Dec. 7, 1990), Crawford App. No. 3–89–27, unreported, 1990 WL 197852.

Appellant alleges the existence of four genuine issues of material fact which render summary judgment inappropriate. These issues, each of which will be addressed individually, are as follows:

"Issue No. 1

"Was there a genuine issue as to whether an implied contract existed between the parties which restricted appellee's ability to drug test and discharge appellant and could the jury have reasonably decided the issue in favor of appellant?"

"Issue No. 2

"Even if there were no genuine issues as to whether an implied contract existed, was there a genuine issue as to whether the appellee was estopped from drug testing and discharging appellant under the doctrine of promissory

estoppel and could the jury reasonably have decided the issue in favor of appellant."

"Issue No. 3

"Was there a genuine issue as to whether the forced drug test was an invasion of appellant's privacy and could the jury have reasonably decided the issue in favor of appellant."

"Issue No. 4

"Was there a genuine issue as to whether appellant waived her contract rights or any other protection against arbitrary drug testing or discharge and could the jury have reasonably decided the issue in favor of appellant."

■ In the first issue raised by appellant she contends that throughout the course of the year that she worked at the appellee's plant under the "Wagemaster" service provided by Manpower, various circumstances gave rise to an implied contract, the terms of which limited appellee's ability to test her for drugs to those circumstances where a reasonable suspicion of drug use existed. In support, appellant directs our attention to appellee's stated drug policy for its employees. Appellant argues that she was an employee of appellee and, in accordance with the terms of its stated drug policy, appellee was unable to test her for drugs absent a reasonable suspicion of drug use. Therefore, appellant argues that she was wrongfully discharged pursuant to a random drug test which constituted a breach of the appellee's implied contract with her.

We reject appellant's argument. The policies which appellant relies upon as giving rise to an implied contract were not applicable to her. The record clearly demonstrates that appellant was neither a salaried employee nor a union employee of appellee, the groups to whom the policies expressly applied. Rather, appellant was a non-union hourly employee of Manpower assigned to appellee's plant for an indefinite period of time. Appellant specifically admitted in her deposition that she was neither a union employee nor a salaried employee of appellee. Further, the record contains no evidence of any representations made to appellant by an authorized representative of appellee stating the company's drug policy or its applicability to appellant.

Appellant would have us believe that she was an employee of appellee and that she was randomly tested for drug use absent any reasonable suspicion that she was using drugs, which would be a violation of the appellee's stated drug policy. This portrayal is unsupported by the facts contained in the record. The record indicates that in July 1988, appellant was notified that appellee planned to hire her as a permanent union employee at which time her relationship with Manpower was terminated. According to the affidavit of

George M. Gibson, manager of appellee's labor department, the company "began drug screening urinalysis tests of all new hires for bargaining unit employees as of April 30, 1986." Pursuant to this policy, appellant was required to complete an application which included the following clauses:

"I understand that any employment pursuant to this application shall be subject to my passing the physical examination which includes a drug screening urinalysis as a condition of final acceptance for employment."

On July 11, 1988, appellant signed the application for hourly employment which included this clause. Further, the record contains evidence that this provision was pointed out to appellant prior to her signing the application.

Thus, we conclude that appellant entered into an express agreement to submit to a physical examination including a urinalysis test for drugs. 17 Ohio Jurisprudence 3d (1980) 432, Contracts, Section 5, provides that:

"As a general rule, if an express contract between the parties is established, a contract embracing the identical subject cannot be implied; in such a case, an implied agreement cannot coexist with the express contract."

Appellant entered into an express agreement to submit to a urinalysis test for drugs and, therefore, cannot claim the benefit of an implied contract restricting drug testing to instances where a reasonable suspicion of drug use is demonstrated. Accordingly, we find that in viewing the facts in the light most favorable to appellant reasonable minds could not conclude that an implied contract existed between the parties and that appellee breached that contract.

In her second issue appellant contends that, in the alternative to a finding of an implied contract, a genuine issue of material fact remains as to whether the doctrine of promissory estoppel restricted appellee from testing her for drugs and discharging her pursuant to the results of that test.

In *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 19 OBR 261, 483 N.E.2d 150, paragraph three of the syllabus, the Supreme Court of Ohio found that:

"The doctrine of promissory estoppel is applicable and binding to oral at-will employment agreements. The test in such case is whether the employer should have reasonably expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee."

In application to the case *sub judice,* we conclude that the trial court's judgment finding there to have been no genuine issue of material fact as to the applicability of the doctrine of promissory estoppel to have been correct. First, we note that the policies set forth by appellee were clearly designated to

be for the benefit of union and salaried employees, of which appellant was neither. Accordingly, we are unable to find that in promulgating these policies appellee can reasonably be expected to have had any anticipation that they would be relied upon by individuals not within the union or salaried employees. Further, this fact renders any reliance on the part of appellant unreasonable. Last, the record does not demonstrate any detrimental reliance on appellant's part whatsoever. Accordingly, we conclude there to have been no issue of material fact as to the applicability of the doctrine of promissory estoppel.

■ In her third issue appellant contends that there remains a genuine issue of material fact as to whether appellee's urinalysis testing of appellant constituted an actionable invasion of privacy.

At the outset we note App.R. 16(A)(4), which, in pertinent part, requires as follows:

"(A) The brief of the appellant shall contain under appropriate headings and in the order here indicated:

"(1) * * *

"(2) * * *

"(3) * * *

"(4) An argument. The argument may be preceded by a summary. The argument *shall* contain the contentions of the appellant with respect to the assignments of error presented, and the reasons therefor, *with citations to the authorities, statutes and parts of the record relied on.*" (Emphasis added.)

Upon review of appellant's memorandum in opposition to appellee's motion for summary judgment and her appellate brief, we note that appellant has failed to submit any authority whatsoever to support this claim. In fact, the only authority discussed by appellant whatsoever is a rebuttal of authority offered by appellee. Nevertheless, we will consider appellant's contention briefly.

The Supreme Court of Ohio first recognized a cause of action for invasion of privacy in *Housh v. Peth* (1956), 165 Ohio St. 35, 59 O.O. 60, 133 N.E.2d 340. Therein, the Supreme Court of Ohio recognized essentially three hybrids of the tort. The hybrid under which we suspect appellant seeks relief is that which provides damages for " * * * the wrongful intrusion into one's private activities in a manner to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities which includes an unreasonable intrusion upon the seclusion of another * * *." *Strutner v. Dispatch Printing Co.* (1982), 2 Ohio App.3d 377, 2 OBR 435, 442 N.E.2d 129, para-

graph one of the syllabus; see, also, Restatement of Law 2d, Torts (1977) 378, Section 652B. Appellant has provided us no authority and we are aware of none extending this cause of action to the realm of drug testing. Rather, as stated in 62A American Jurisprudence 2d (1990) 683, Privacy, Section 61:

"The courts appear to be supportive of employers' attempts to create a safe working environment by holding that drug-testing does not constitute an invasion of the employees' common law right to privacy."

Accordingly, we conclude that there exists no genuine issue of material fact as to whether appellee's drug testing of appellant constituted an actionable invasion of her right to privacy.

The fourth and final issue raised by appellant contends that there remains a genuine issue of material fact as to whether she waived her alleged contract rights or any other protections against arbitrary drug testing or discharge.

We conclude that the issue of waiver is not properly before the court in this appeal because there has been no judgment of the trial court addressing the appellee's defense of waiver. A motion for summary judgment challenges the sufficiency of the complaint to give rise to a genuine issue of material fact upon which reasonable minds can differ. On appeal, appellant must demonstrate the existence of such an issue arising from his complaint.

This case appears to turn on the question of whether appellant was a Goodyear employee at the time of her discharge. While we believe appellant was not an employee of Goodyear, we also believe this case can be decided without resolving that question. The drug policies prepared by appellee constituted an express agreement between appellee, its union employees and its salaried employees. It is uncontroverted that appellant was not a member of either of these classes. Thus, even if she was an employee of some sort, these policies, by their express terms, were inapplicable to appellant. In fact, the only contractual relationship between appellant and appellee demonstrated in the record was that found in her application for permanent union employment wherein she expressly agreed to submit to a drug test. We conclude that, in viewing the facts in the light most favorable to appellant, reasonable minds can reach but one conclusion, that being adverse to appellant. Accordingly, appellee was entitled to judgment as a matter of law.

Having found no error prejudicial to appellant, in any of the particulars assigned and argued herein, the judgment of the trial court is affirmed.

*Judgment affirmed.*

THOMAS F. BRYANT, P.J., and SHAW, J., concur.